UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| STE. GENEVIEVE MEDIA, LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) ) |
| | ) Case No. 1:16 CV 87 ACL |
| PULITZER MISSOURI NEWSPAPERS, INC. d/b/a DAILY JOURNAL, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This action is before the Court on Defendant's Motion to Dismiss. (Doc. 14.) Plaintiff opposes the Motion, and this issue is fully briefed.

**I.   Background**

This cause was originally filed in the Circuit Court of Ste. Genevieve County, Missouri, and was removed to this court pursuant to both the Court's diversity jurisdiction, and federal question jurisdiction. Plaintiff Ste. Genevieve Media, LLC, is the owner-operator of the Ste. Genevieve Herald, a weekly print and electronic newspaper with its principal place of business located in Ste. Genevieve, Missouri. Defendant Pulitzer Missouri Newspapers, Inc., is a Delaware Corporation registered in the State of Missouri, doing business as the Daily Journal, a print and electronic newspaper with business offices located in Park Hills, Missouri. In the original Complaint, Plaintiff asserted a claim under the Missouri Merchandising Practices Act ("MMPA"), alleging the Daily Journal misappropriated and plagiarized its news articles without consent or attribution. (Doc. 6.)

1

Defendant moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing Plaintiff lacked standing under the MMPA, and that Plaintiff's claim was preempted by the Copyright Act. (Doc. 9.) In response, Plaintiff filed an Amended Complaint, in which Plaintiff abandons the MMPA claim and alleges two new claims—a "hot news" misappropriation claim, and an unjust enrichment claim. (Doc. 11.)

Defendant then filed the instant Motion to Dismiss, arguing that Plaintiff's unjust enrichment claim is preempted by the Copyright Act, and Plaintiff's "hot news" misappropriation claim fails as a matter of law. (Doc. 14.)

Plaintiff subsequently filed a Motion for Leave to File a Second Amended Complaint (Doc. 25), which the Court granted on September 29, 2016 (Doc. 27). The Second Amended Complaint adds an additional count of copyright infringement against Defendant—Count III—based on a recent copyright registration. (Doc. 28.) The Court ordered that Defendant's pending Motion to Dismiss shall apply to the Second Amended Complaint. (Doc. 27.) Defendant has filed an Answer to Count III of the Second Amended Complaint, but has not moved to dismiss this claim. (Doc. 29.)

**II.     Legal Standard**

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). A complaint must be dismissed for failure to state a claim if it does not plead enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 560 (2007). A petitioner need not provide specific

facts to support his allegations, *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the grounds on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir. 2008), *cert. denied,* 129 S.Ct. 222 (2008) (quoting *Twombly,* 550 U.S. at 555–56 & n. 3).

In ruling on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the petitioner. *Kottschade v. City of Rochester,* 319 F.3d 1038, 1040 (8th Cir. 2003). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the factual content ... allows the court to draw the reasonable inference that the respondent is liable for the misconduct alleged." *Cole v. Homier Dist. Co., Inc.,* 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). When determining the facial plausibility of a claim, the Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta,* 410 F.3d 1036, 1039 (8th Cir. 2005)).

**III.     Discussion**

As previously noted, Defendant argues that Plaintiff's Unjust Enrichment Claim is preempted by the Copyright Act, and Plaintiff's "hot news" misappropriation claim fails as a matter of law.

**A.     Unjust Enrichment Claim**

In Count II of the Second Amended Complaint, Plaintiff alleges that Defendant has "enjoyed substantial profits through the misappropriation and use of Plaintiff's Articles." (Doc. 28 at ¶ 38.) Plaintiff contends that Defendant "would not have made such sales or earned the

3

profits there from but for the misappropriation and use of Plaintiff's articles." *Id.* at ¶ 39. Plaintiff alleges that Defendant's gain in sales and profits came at the expense of Plaintiff, and that Defendant has been "unjustly enriched as a result of its misappropriation and use of Plaintiff's articles and work product, and under principles of equity should not be permitted to retain these unjustly acquired gains." *Id.* at ¶¶ 40, 41.

Defendant argues that Plaintiff's state law unjust enrichment claim is preempted by the Copyright Act.

The Copyright Act provides the exclusive source of protection for all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright. *National Car Rental System, Inc. v. Computer Associates Intern., Inc.*, 991 F.2d 426, 428 (8th Cir. 1993). The preemption provision is found in Section 301(a) of the Copyright Act, which states in part:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright ... are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

"A state cause of action is preempted if: (1) the work at issue is within the subject matter of copyright as defined in §§ 102 and 103 of the Copyright Act, and (2) the state law created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106." *National Car Rental System, Inc.*, 991 F.2d at 428.

4

1. **Subject Matter of Copyright**

The Copyright Act defines "subject matter of copyright" as "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). The statute includes "literary works" among the enumerated categories of works of authorship. *Id.*

It is well-established that facts are not copyrightable. *Feist Publications, Inc. v. Rural Telephone Services Co., Inc.*, 499 U.S. 340, 344 (1991). "At the same time, however, it is beyond dispute that compilations of facts are within the subject matter of copyright." *Id.* at 345. Courts have recognized that news articles are within the subject matter of copyright. *See Inter-City Press, Inc. v. Siegfried*, 172 F. Supp. 37, 40-41 (W.D. Mo. 1958) ("Where a particular newspaper article 'involve[s] authorship and literary quality and style, apart from bare recital of the facts or statements of news, it is protected by the copyright law.'") (quoting *Chicago Record-Herald Co. v. Tribune Ass'n*, 275 F. 797, 798 (7th Cir. 1921)); *International News Service v. Associated Press*, 248 U.S. 215, 234 (1918) (a news article, "as a literary production, is the subject of copyright").

Plaintiff's news articles at issue in this case are within the subject matter of copyright. As such, the first prong of the two-part analysis is satisfied.

2. **Equivalence**

In determining whether the rights at issue are equivalent, the Court must consider whether "there is an 'extra element' that changes the nature of the state law action so that it is *qualitatively* different from a copyright infringement claim." *Huckshold v. HSSL, L.L.C.*, 344 F. Supp.2d 1203, 1206 (E.D. Mo. 2004) (emphasis in original). "The existence of an extra element

precludes preemption only where the element changes the nature, rather than the scope, of the action." *Stromback v. New Line Cinema,* 384 F.3d 283, 301 (6th Cir. 2004).

A claim of unjust enrichment under Missouri law requires proof that: (1) the defendant was enriched by the receipt of a benefit, (2) the enrichment was at the expense of the plaintiff, and (3) it would be unjust to allow the defendant to retain the benefit. *Beeler v. Martin*, 306 S.W.3d 108, 112 (Mo. Ct. App. 2010).

The majority of courts to consider this issue have determined that state unjust enrichment claims are preempted by the Copyright Act. *See R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1148 (10th Cir. 2009); *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2nd Cir. 2004); *Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 637-38 (6th Cir. 2001) (abrogated on other grounds); *Issaenko v. Univ. of Minnesota*, 57 F. Supp.3d 985, 1029 (D. Minn. 2014); *Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp.2d 664, 695-96 (M.D. N.C. 2011); *Two Palms Software, Inc. v. Worldwide Freight Mgmt., LLC*, 780 F. Supp.2d 916, 923 (E.D. Mo. 2011); *Blue Nile, Inc. v. Ice.com, Inc.*, 478 F. Supp.2d 1240, 1251 (W.D. Wash. 2007); *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp.2d 756, 769 (N.D. Tex. 2006); *Ott v. Target Corp.*, 153 F. Supp.2d 1055, 1067 (D. Minn. 2001).

Plaintiff, citing *Wolff Shoe Company v. Mosinger Company*, LLC., No. 4:11CV601TIA, 2012 WL 1033364, at * 6 (E.D. Mo. Mar. 27, 2012), argues that its unjust enrichment claim requires the additional element of an unjust retention of a benefit and is thus not preempted.

Although *Wolff Shoe Company* did hold as Plaintiff suggests, the Court[1] did not address any of the contrary authority mentioned above, including another decision of this Court.[2]

In its unjust enrichment claim, Plaintiff alleges that Defendant has enjoyed substantial profits "through the misappropriation and use of Plaintiff's Articles." As such, the "gist of [Plaintiff]'s unjust enrichment claim is the defendant's unauthorized use" of Plaintiff's articles. *Two Palms Software, Inc.*, 780 F.Supp.2d at 923. Plaintiff's unjust enrichment claim is not qualitatively different from a copyright infringement claim, and is therefore preempted.

Accordingly, Plaintiff's unjust enrichment claim set forth in Count II will be dismissed.

### B. "Hot News" Misappropriation Claim

In Count I of the Second Amended Complaint, Plaintiff states that it "collects newsworthy information, creates and edits new stories based upon that information, and transmits its news stories in a timely fashion via print and internet at substantial economic, professional and personal cost." (Doc. 28 at ¶ 26.) Plaintiff alleges that the value of the new stories that it gathers, creates and transmits is highly time sensitive. *Id.* at ¶27. Plaintiff states that Defendant's use of Plaintiff's news stories constitutes free-riding on Plaintiff's significant, costly efforts to generate its news stories. *Id.* at ¶ 28. Plaintiff contends that the ability of Defendant, a direct competitor, to free-ride renders Plaintiff's publication of the news stories cost prohibitive in comparison to the return. *Id.* at ¶ 30-31.

Defendant argues that Plaintiff's "hot news" claim fails, because the news allegedly misappropriated was not time sensitive, and because the alleged misappropriation occurred only after Plaintiff had published and received the non-copyright protected benefit of its efforts.

---

[1] United States Magistrate Judge Terry I. Adelman.
[2] *Two Palms Software, Inc. v. Worldwide Freight Mgmt., LLC*, 780 F. Supp.2d 916, 923 (E.D. Mo. Feb. 18, 2011) (United States District Judge Carol E. Jackson).

The type of misappropriation identified in *International News Service v. Associated Press*, 248 U.S. 215 (1918), has become known as "hot news" misappropriation. In *International News Service* ("*INS*"), the Plaintiff Associated Press ("AP") and Defendant INS were both in the news wire business in which they competed to gather and distribute news to member newspapers. INS would lift factual stories from AP bulletins and send them by wire to INS papers. *Id.* at 231. INS would also take factual stories from east coast AP papers and wire them to INS papers on the west coast that had yet to publish because of time differentials. *Id.* at 238. The Supreme Court held that INS's conduct was a common law misappropriation of AP's property. *Id.* at 242.

The law established by *INS* was abolished by *Erie Railroad Co.. v. Tompkins*, 304 U.S. 64 (1938), which largely abandoned common law. However, based on legislative history of the 1976 Copyright Act amendments, "it is generally agreed that a "'hot-news' *INS*-like claim survives preemption." *National Basketball Assoc. v. Motorola, Inc.*, 105 F.3d 841, 845 (2d Cir. 1997) ("*NBA*").

This Court[3] examined the issue of whether a "hot news" claim was a valid cause of action in Missouri in *Fred Wehrenberg Circuit of Theatres, Inc. v. Moviefone, Inc.*, 73 F. Supp.2d 1044, 1047 (E.D. Mo. 1999) ("*Wehrenberg*"). The Court found that "because the common law of misappropriation in Missouri was based on *International News Service* and the very narrow exception of misappropriation of 'hot news' as promulgated in *International News Service* survives federal copyright preemption based on the House Report, the Court believes that Missouri would allow a cause of action based on misappropriation of 'hot news.'" *Id.* at 1050.

---

[3] United States District Judge Catherine D. Perry.

The Court noted that, in *NBA*, the Second Circuit set out the following elements necessary to establish a "hot news" claim: (1) the plaintiff generates or collects information at some cost or expense; (2) the value of the information is highly time sensitive; (3) the defendant's use of the information constitutes free-riding on the plaintiff's costly efforts to generate or collect it; (4) the defendant is in direct competition with a product or service offered by the plaintiff; and (5) the ability of other parties to free-ride on the efforts of the plaintiff would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened. *Id.* (citing *NBA*, 105 F.3d at 845).

The parties dispute whether Plaintiff has satisfied the second element. Plaintiff acknowledges that to satisfy the second element, Plaintiff must allege "not only that the news was time-sensitive when it was gathered, but that it was time-sensitive when it was misappropriated." *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp.2d 596, 612 (S.D. N.Y. 2010) (citing *NBA*, 105 F.3d at 853) (noting that a hot-news claim "is about the protection of property rights in time-sensitive information"). Plaintiff contends that this element is satisfied, as Defendant generally publishes the same article as Plaintiff with nearly identical titles within three to four days of Plaintiff's publication. Plaintiff contends that, because Plaintiff publishes a weekly print newspaper, Plaintiff's articles are still in the original print newspaper and available at newsstands while they are published by Defendant.

Defendant argues that Plaintiff's claim fails because the news allegedly appropriated by the Daily Journal was not time-sensitive, and the alleged re-publication of the articles occurred between two and five days after Plaintiff's publication of the articles. Defendant further argues that a "hot news" claim cannot be used to avoid copyright preemption when a copyright claim would lie. The undersigned agrees and will dismiss Plaintiff's "hot news" claim.

The facts set forth in the Second Amended Complaint reveal that Plaintiff's claim does not fit within "the very narrow exception of misappropriation of 'hot news' as promulgated in *International News Service*." *Wehrenberg*, 73 F. Supp.2d at 1050. The Ste. Genevieve Herald is a weekly publication "dedicated to providing unbiased and accurate reporting about events, issues and people that affect Ste. Genevieve County and its residents." (Doc. 11 at ¶ 7.) The articles at issue concern subjects such as local tourism, civil lawsuits filed, the reduction of hours at the local postal service, planned road projects, and other matters of local concern. (Doc. 11 at ¶ 16.) Plaintiff has attached the subject articles to the First Amended Complaint. The news reported in the articles at issue occurred days and, in some cases months, prior to Plaintiff's publication of the articles. (Doc. 11-1.) Defendant's re-publication of the articles in turn occurred between two and five days after Plaintiff's publication. (Doc. 11 at ¶ 16.) The facts in this case are quite different from those in *INS*, in which the plaintiff and defendant both provided a daily service to daily newspapers, and the defendant published news obtained from the plaintiff prior to or simultaneously with the plaintiff's publication. 248 U.S. at 238.

In *Gannett Satellite Info. Network, Inc. v. Rock Valley Community Press, Inc.*, No. 93C20244, 1994WL606171 (N.D. Il. Oct. 24, 1994), the Northern District of Illinois considered facts very similar to those of the instant case and found that the "hot news" claim was preempted. In that case, the plaintiff local newspaper alleged that a competing newspaper copied its articles and published them between four and eight days later. *Id.* at * 1-2. The defendant argued that the information contained in the plaintiff's news articles and reprinted in defendant's articles was not sufficiently "hot" under *INS* to preclude preemption. The court first noted that the "driving force in the *International News* opinion was the need to provide an equitable remedy to protect one news agency's quasi-property interest in factual news from unauthorized use by a competitor

where no alternative remedy was available." The court found that "[s]uch is not the case here where plaintiff has as potential remedies at the very least copyright claims …" *Id.* at * 5. The court next stated that the "interest to be protected in *International News* was the value to the individual news agency in distributing timely, fresh 'news,'" and that nothing defendant did interfered with plaintiff's right to publish timely, fresh news. *Id.* The court explained that defendant's use of the quoted material "occurred only after plaintiff had already published its newspaper articles," and that plaintiff had already "received the full value of its newsgathering efforts under these facts." *Id.*

Plaintiff has failed to set forth a plausible "hot news" claim, as the facts alleged do not demonstrate that the articles allegedly misappropriated were time sensitive when they were published or when they were misappropriated. Thus, Count I will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 14) is **granted**.

**IT IS FURTHER ORDERED** that Counts I and II of the Second Amended Complaint are **dismissed**.

                                          s/Abbie Crites-Leoni
                                          ABBIE CRITES-LEONI
                                          UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of October, 2016.